MARY ADORNATO et al., Respondents, *v.* PETER KIEWIT SONS CO., INC., Defendant, and CONGEL-HAZARD, INC., Appellant.

Fourth Department, April 9, 1970.

*Hancock, Ryan, Shove & Hust* (*Donald P. McCarthy* of counsel), for appellant.

*Francis R. Belge* for respondents.

*Per Curiam.* Defendant Congel-Hazard appeals from a judgment of Onondaga Trial Term rendered after a trial without a jury, adjudging that appellant was guilty of negligence which was the proximate cause of injury to plaintiffs' premises.

The complaint alleges that on July 6, 1966 plaintiffs' property was damaged through negligence of defendant when water backed up from sewer connections into the basement of plaintiffs' premises. There was a heavy rain storm on July 6, 1966, which caused flooding conditions in Burnet Avenue and other streets in the City of Syracuse. At that time appellant was installing a new sewer which was to be connected to the old brick Burnet Avenue sewer on James Street a short distance west of State Street, under a subcontract with general contractor Peter Kiewit Sons. The old sewer was 25 feet underground and in order to connect it with the new sewer, it would be necessary to excavate down below it. The general contractor laid out the location of the center line of the new sewer to be constructed and appellant measured 8 feet each side of that line to establish the lines where the sheet piling would be driven. It was assumed that the line of the old sewer would be midway between these sheet piling lines. Appellant drove strips of steel 30 feet long and 18 inches wide along the lines on each side of the sewer line laid out by the general contractor until June 20, 1966 when one of the strips driven on the south side penetrated the old sewer. The occurrence was reported to the general contractor and the State Resident Engineer. Three days thereafter appellant excavated between the two lines of sheet piling down to the sewer fracture and inspected the damage caused to the sewer. The general contractor's Project Superintendent Schmeckpeper and its Project Engineer Cahen were there at that time. They found that the sewer was not physically impaired and decided to leave the sheeting in place and to drive another row of piling five feet further south. This plan was approved by the State Resident Engineer. The sewer was then covered and the test excavation was back filled.

The trial court found that this intersection of the old sewer by the steel sheeting caused an obstruction so that the rainfall on July 6, 1966 was not able to flow past that point in sufficient quantity to avoid back up. This finding is contrary to testimony of the general contractor's engineers who testified that

the sewer was not impaired physically and the flow was ample. There was no evidence of collapse. The sheets had become an integral part of the sewer and they were actually supporting it. The total capacity of the sewer before the penetration of it was 304 cubic feet per second and thereafter it was 279 cubic feet per second which was well over the 250 cubic feet per second flow required to be maintained by the contract. Plaintiffs' attorney conceded that this reduction in sewer capacity would not impair the flow sufficiently to cause a back up in the sewer but based his case on the conclusion that the penetration caused a collapse of the sewer subsequent to the penetration of the sewer.

The trial court did not find that the sewer was caused to collapse but found that as a result of the penetration of the sewer by the steel sheeting the integrity of the sewer was impaired and the flow was impeded as evidenced by a settling of the ground level (observed by witness Rook) downstream from the intersection. The trial court's reliance on evidence of this depression appears to be misplaced because the depression was separated from the sewer penetration by a wall of sheet piling and was a considerable distance from the penetration.

There was evidence that on the day of the flood the sewer at the manhole upstream from the sewer penetration was running full whereas the water was only two feet deep in the sewer at the manhole downstream from the penetration. From this evidence it might well be inferred that the sewer had collapsed or become obstructed between the two manholes. There was other evidence, however, that the high water at the upstream manhole was caused by the junction of the James Street sewer with the Burnet Avenue sewer at that point. State Resident Engineer Marsh and witnesses Schmeckpeper, Cahen, and Congel all testified that the sewer downstream from the penetration was flowing full on the morning following the flood and that proved to them that the sewer had not collapsed or become obstructed and that it was then intact.

In our opinion the trial court's finding that appellant was guilty of negligence which caused injury to plaintiffs' premises is against the weight of the evidence. The peculiar facts of this case and the importance of it, not only to the immediate parties and the court but also to other litigants whose cases are pending, mandated that the trial court should have passed upon the proposed findings submitted to it following the making of its written decision. Because of such failure, the inadequacy of the decision and the possibility of additional evidence being

adduced, there should be a new trial. (*Kundla* v. *Symans,* 9 A D 2d 1021; *Baccialon* v. *Guerra,* 282 App. Div. 755.)

The judgment should be reversed on the law and facts and a new trial granted, with costs to abide the event.

DEL VECCHIO, J. P., MARSH, MOULE, BASTOW and HENRY, JJ., concur.

Judgment unanimously reversed on the law and facts and a new trial granted, with costs to abide the event.